IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br>RICHARD J. SHIELDS,<br><br>        Debtor,<br>_____<br>NEIL MCLEAN,<br><br>        Appellant,<br><br>        v.<br><br>THE BANKRUPTCY ESTATE OF RICHARD<br>J. SHIELDS, by and through<br>MICHAEL F. BURKHART, Chapter 7<br>Trustee,<br><br>        Appellee.<br>_____ | 2:11-cv-01435-GEB<br><br>Bankruptcy Court Case No. 06-22377-C-7<br><br>Adv. Proc. No. 08-02352<br><br><br>ORDER |

      Appellant Neil McLean appeals the bankruptcy court's May 10, 2011 order after remand, in which the bankruptcy court confirmed its initial award of damages in the amount of $300,000. Appellant argues "[t]he Bankruptcy Court failed to follow the Court's mandate on remand and simply reaffirmed its initial conclusion that the accounts are part of the sale proceeds without any substantive explanation." (Appellant's Br. 9.) Appellee filed a brief in response, requesting "this Court affirm the judgment in the amount of $300,000." (Appellee's Br. 10.) Jurisdiction over the appeal is under 28 U.S.C. §§ 158(a)(1) and (c)(1).

### I. FACTUAL RECORD ON APPEAL

      Shields is the former owner of Shields Trucking, a trucking company that encountered financial difficulties in the summer of 2004.

(Appellee's Excerpt of Record ("ER") 3, ¶¶ 2, 8-9.) McLean, a sales manager for a motorcycle dealership, loaned money to Shields Trucking, which Shields avers in his declaration "was to be credited to the purchase price for Shields Trucking if an agreement were reached or paid back if no agreement for the purchase of the business by McLean was reached." Id. ¶ 15. An agreement was never reached between Shields and McLean, and in 2005, Shields "began exploring opportunities to sell Shields Trucking to other purchasers[.]" Id. ¶ 34. By the fall of 2005, Shields was negotiating with SoCal D&D Services, Inc. ("D&D") to purchase Shields Trucking. Id. ¶ 47. However, negotiations were disrupted when Longaway, McLean's lawyer, sent D&D a letter stating that McLean and Shields had already reached an agreement for McLean to purchase Shields Trucking. (Appellee's ER 2, ¶ 19.)

Diver, a former accountant for Shields Trucking, avers in his declaration: "After Longaway's December 23, 2005 letter to D&D . . ., D&D immediately backed out of their agreement to purchase Shields Trucking." Id. ¶ 45. Shields declares "it was specifically agreed that as part of the deal [with D&D] all debt paid to Shields Trucking would be paid off[.]" (Appellee's ER 3, ¶ 52.) Shields further declares "[t]he proceeds of the sale . . . would have allowed me to pay off all the debts of Shields Trucking, including all amounts owed to McLean, and left me with more than $300,000"; however "[a]fter D&D backed out of the purchase of Shields Trucking, the business could not overcome its financial problems and I was forced to file for bankruptcy." Id. ¶¶ 69, 71-72; see also Appellant's ER 5 (showing Diver's calculation of Shields' loss from the disruption of sale as $327,151).

On July 2, 2008, Burkhart commenced an adversary proceeding on behalf of the bankruptcy estate against McLean and Longaway; included in

the complaint was a claim against McLean for interference with prospective economic advantage. (Appellant's ER 1.) The adversary proceeding was tried in the bankruptcy court. On October 5, 2009, the bankruptcy court ruled in favor of the bankruptcy estate on the interference with prospective economic advantage claim and entered a $300,000 judgment, $200,000 of which was categorized as accounts receivable. (Appellant's ER 6; Appellant's ER 5, 233.) McLean and Burkhart each appealed from this judgment. (Appellant's ER 7,8.)

On November 18, 2010, this Court remanded to the bankruptcy court its initial factual determination that the $200,000 value of the accounts receivable was to be included in the damages award. (Appellee's ER 5, 5:9-25.) Specifically, this "issue was remanded for deletion of this amount from the judgment or for a clearer explanation of the judgment." Id. 5:18-21. Although this Court affirmed the measure by which the bankruptcy court calculated the award, it determined the inconsistent statements made by the bankruptcy court in the record made "the bankruptcy court's reason for including the referenced $200,000 in the judgment . . . unclear . . . ." Id. 5:18-19.

On May 10, 2011, the bankruptcy court issued an order after remand, confirming its award of damages in the amount of $300,000 and explaining the judgment is based on "the reasons as stated on the record at the hearing on February 17, 2011," and the following:

> [T]he "loss of 'net proceeds from the sale' of Shields Trucking" amounted to $300,000 was the result of an overall calculation of the "pecuniary loss of the benefits of the contract"—a damage measure expressly endorsed by the District Court and undoubtedly proper under California law. Simply put, had the contract for sale not been disrupted Shields would have been able to be free from a failing business and left with $300,000 in excess cash. Thus, when McLean wrongfully interfered with the sale and stripped Shields from receiving the benefits of the contract, the pecuniary loss was at

3

1  least $300,000.
2  (Appellee's ER 8, 2:2-10.) On May 25, 2011, Appellant filed a Notice of
3  Appeal from the May 11, 2011 order after remand and the October 5, 2009
4  judgment. (ECF No. 1.)

## II.   ISSUES RAISED BY APPELLANT

Appellant raises four issues on appeal from the bankruptcy court's May 10, 2011 order after remand, each stemming from the inclusion of the $200,000 value of accounts receivable in the award of damages: (1) "Did the Bankruptcy Court err in refusing to delete from its judgment the sum of $200,000 awarded for accounts receivable that were not to be sold and were retained by Shields?"; (2) "Did the Bankruptcy Court err by failing to provide a clearer explanation of the award of $200,000 for accounts receivable in that the court simply reaffirmed its initial holding that the receivables were part of the 'net proceeds' of the sale?"; (3) "Did the Bankruptcy Court err by failing to explain why its initial award of damages included $200,000 for accounts receivable that were not to be sold?"; and (4) "Did the Bankruptcy Court err by failing to consider the fact that its initial award of damages included $200,000 for accounts receivable?" (Appellant's Br. 7.)

Additionally, Appellant raises seven "issues on appeal from the Bankruptcy Court's [October 5, 2009] judgment." Id. However, the Court has already ruled on each of these issues in its November 18, 2010 order and Appellant has not shown that reasons justifying reconsideration of any of these rulings exist. See Gonzalez v. Arizona, 624 F.3d 1162, 1186-87 (9th Cir. 2010) ("Law of the case should not operate as a constraint on judicial review where (1) the decision is clearly erroneous and its enforcement would work a manifest injustice,

1  (2) intervening controlling authority makes reconsideration appropriate,
2  or (3) substantially different evidence was adduced at a subsequent
3  trial."). "[A]n appellate court cannot efficiently perform its duty to
4  provide expeditious justice to all if a question once considered and
5  decided by it were to be litigated anew in the same case upon any and
6  every subsequent appeal." Id. at 1186 (internal quotation marks
7  omitted). Therefore, the previously decided issues will not be
8  reconsidered.

### III.   LEGAL STANDARD

10       "The bankruptcy court's legal conclusions are subject to de
11  novo review, while its factual findings are reviewed under a clearly
12  erroneous standard." In re Bailey & Assoc., APC, 2011 WL 3941461, at *2
13  (C.D. Cal. Sept. 6, 2011) (internal citation and quotation marks
14  omitted); see also In re Olshan, 356 F.3d 1078, 1083 (9th Cir. 2004)("We
15  apply the same standard of review applied by the district court,
16  reviewing the bankruptcy court's legal conclusions de novo and its
17  factual determinations for clear error."). Here, the issues raised on
18  appeal are factual findings, and the bankruptcy court's determinations
19  are therefore considered under the clearly erroneous standard.

20       "Under the clearly erroneous standard, 'the court must accept
21  the bankruptcy court's findings of fact unless, upon review, the court
22  is left with the definite and firm conviction that a mistake has been
23  committed by the bankruptcy judge.'" In re Bailey, 2011 WL 3941461, at
24  *2 (quoting In re Greene, 583 F.3d 614, 618 (9th Cir. 2009)). Further,
25  "[a] reviewing court may not overturn a decision, even if it would have
26  weighed the evidence in a different manner, so long as the trial court's
27  view of the evidence is plausible in light of the entire record." Id.
28  "Moreover, in applying the clearly erroneous standard, the appellate

court views the evidence in the light most favorable to the party that prevailed below." Id.

### IV.  DISCUSSION

Appellant seeks reversal of the bankruptcy court's inclusion of the $200,000 accounts receivable in the $300,000 damages award, arguing as follows:

> This Court[, in its prior order,] provided the Bankruptcy Court with two options: delete $200,000 from the judgment or provide a clearer explanation for the amount of damages. The Bankruptcy Court failed to follow the Court's mandate on remand and simply reaffirmed its initial conclusion that the accounts are part of the sale proceeds without any substantive explanation.

(Appellant's Br. 9.) Specifically, Appellant contends "[t]he Bankruptcy Court's sole reason for including the accounts receivable in its award of damages was that they were part of the purchase price." Id. at 1. Appellant further argues this award contained "$200,000 for accounts receivable that were explicitly excluded from the proposed sale and were to be retained by Shields, not sold to D&D Services." Id. In sum, Appellant argues the bankruptcy court should have awarded Shields damages under the benefit-of-the-bargain theory, or the additional amount he would have recovered had the contract been realized. Under such a calculation, Appellant argues, Shields would only recover $100,000.

Appellee rejoins, arguing "the court below was obligated to try to put Shields in the same position he would have been in had the sale of Shields Trucking closed (i.e., without McLean's wrongful interference)." (Appellee's Br. 9.) Further, Appellee contends "[t]he Court's factual findings as the total amount of the net loss from the sale properly were based on the transaction as a whole." Id. at 10.

6

1  Under California Civil Code section 3333, the measure of
2 damages "[f]or [a] breach of an obligation not arising from contract
3 . . . is the amount which will compensate for all the detriment
4 proximately caused thereby, whether it could have been anticipated or
5 not." "Tort damages are awarded to fully compensate the victim for all
6 the injury suffered. There is no rule for the measure of tort damages
7 under . . . section 3333. The measure that most appropriately
8 compensates the injured party for the loss sustained should be adopted."
9 Metz v. Soares, 142 Cal. App. 4th 1250, 1255 (2006) (internal citations
10 and quotation marks omitted); see also id. at 1255 ("A plaintiff in a
11 tort action is not, in being awarded damages, to be placed in a better
12 position than he would have been had the wrong not been done.");
13 Christiansen v. Roddy, 186 Cal. App. 3d 780, 790 (1986) ("[S]uccessful
14 tort plaintiffs are not entitled to have damages computed on a contract,
15 or 'benefit-of-the-bargain,' theory.").

16  "The measure of damages for intentional interference with
17 . . . prospective economic advantage is an amount that will reasonably
18 compensate plaintiff for all loss or harm, providing . . . it was . . .
19 suffered by plaintiff and caused by the defendant's conduct. The amount
20 of such harm or loss includes the financial loss of the benefits of
21 . . . the prospective economic relationship." Sole Energy Co. v.
22 Petrominerals Corp., 128 Cal. App. 4th 212, 233 n.7 (2005). "Thus, the
23 question is simply what detriment was proximately caused by defendant's
24 breach." Metz, 142 Cal. App. 4th at 1255 (internal quotation marks
25 omitted).

26  Since under California tort law, a court must award damages
27 that place an individual where he would have been had the tortious act
28 not occurred, it is now determined whether the bankruptcy court's

findings of fact are clearly erroneous under this standard. In its order, the bankruptcy court found that McLean's interference proximately caused Shields to lose $300,000:

> Simply put, had the contract for sale not been disrupted Shields would have been able to be free from a failing business and left with $300,000 in excess cash. Thus, when McLean wrongfully interfered with the sale and stripped Shields from receiving the benefits of the contract, the pecuniary loss was at least $300,000.

(Appellee's ER 8, 2:2-10.) However, Appellant points to certain language in the bankruptcy court's February 17, 2011 hearing on remand, arguing it establishes "the receivables were included in the damages because they were part of the sale proceeds and for no other reason." (Appellant's Reply 1.) Appellant cites to the following statements made by the bankruptcy court during the hearing on remand as support for his argument:

> But the net proceeds of the sale, in my mind, include what Mr. Shields ended up with, and you know, i[n] my mind, the sales price included whatever he was going to receive plus anything that he could keep from the business.
>
> In other words, he was selling the business but the sales price of the business to the seller includes, say, accounts receivable that the seller gets to keep. That is part of the sales price. It's part of the cash that the seller receives upon the sale.
>
> It's just a matter of, short-circuiting the idea that the receivables go to the buyer and then they are given back to the seller. It's part of the cash that the seller receives upon the sale.

(Appellant's ER 12, 9:2-13.) Further, Appellant relies upon the bankruptcy court's statement that "[Shields] could have walked away, had that sale been done, he could have walked away with $300,000, and that is the basis of my decision." Id. 11:11-14.

The bankruptcy court's judgment must be considered in light of

8

the entire record, however, and the statements referenced by Appellant do not leave "the [C]ourt . . . with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." In re Bailey & Assoc., APC, 2011 WL 3941461, at *2 (C.D. Cal. Sept. 6, 2011). The bankruptcy court's consideration of Shields' failing business in its order on remand shows that the bankruptcy court considered the net proceeds of the sale in the context of the entire transaction, as required under California tort law. Further, this finding by the bankruptcy court is plausible based on the evidence in the record since, as argued by Appellee:

> To say the loss was only $100,000, because Shields kept the $200,000 worth of accounts receivable when he was unable to unload his failing business, when the net benefit of keeping the $200,000 in [accounts receivable] was dwarfed by the more than $1.8 million in accounts payable he could not get rid of through the sale, is to ignore the economic reality of the transaction.

(Appellee's Br. 8.) Therefore, since the bankruptcy court made clear the basis upon which it calculated its initial $300,000 damages award and this basis is consistent with California tort law, the bankruptcy court did not commit clear error and its judgment on remand is affirmed.

## V. CONCLUSION

For the stated reasons, the bankruptcy court's order is affirmed.

Dated: February 13, 2012

_____
GARLAND E. BURRELL, JR.
United States District Judge